{¶ 49} Being unable to agree with the majority's disposition of Cooke's first assignment of error, I respectfully dissent.
 {¶ 50} In looking at the evidence Cooke submitted in support of his claims, there is no evidence that James helped organize the press conference, nor did he distribute written materials or the videotape to the media. According to his deposition testimony, James had a general idea as to what the press conference was going to be about, but as discussed above, mere knowledge of the acts of another is insufficient to support liability for defamation. The majority finds that James was an active participant in the press conference during which the defamatory comments were made and written materials distributed. However, James chose his own words carefully at the press conference, even stating at one point, "I am not accusing Reggie of anything." In sum, what James said, and more importantly the lack of evidence concerning any involvement in planning the press conference, do not constitute the kind of positive act necessary for one to be liable for defamation. I disagree that mere participation in a press conference where someone else makes defamatory statements is sufficient to constitute participation in the publication of defamatory material.
 {¶ 51} With respect to the motion for sanctions, communications between James and UDF are shielded by attorney-client privilege, and it is impossible to know whether UDF modeled its press materials after the motion for sanctions, whether James or other attorneys for UDF modeled the motion for sanctions after the press release materials, or even whether James was aware of the press release materials when he signed the certificate of service on the motion for sanctions. While we must view the evidence in a summary judgment motion most strongly in favor of the nonmoving party, such a view does not extend to rank speculation.
 {¶ 52} Finally with respect to the billing records, some of the billing entries appear innocuous at best. In addition, the records concerning meetings after the press conference are irrelevant to establishing that James participated in the planning of the event. Construing all of this evidence most strongly in favor of Cooke, I find the most that can reasonably be inferred is that James had discussions with Edward Howard and UDF people before and after the press conference, and that at least one of the conversations pertained to the upcoming press conference. However, Cooke has failed to establish any evidence of a conspiracy or that James was involved in developing the written materials or deciding what Gillan would say at the press conference such that James could be held liable for the defamatory comments attributed to Gillan. In order to reach such a conclusion, I would first have to infer that James' discussions with Gillan and the others extended beyond his legal representation of Colleen Cheadle and UDF, that he discussed or planned or knew what Gillan intended to say at the press conference, and that there was an agreement on some level to knowingly make false statements or make statements with a reckless disregard of whether the statements were false at the press conference. Cooke has failed to meet his burden of showing the existence of a genuine issue of material fact with regard to this claim. Accordingly, I would affirm the judgment of the trial court.